UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BROWN,<br><br>        Plaintiff,<br><br>    v.<br><br>W. RASLEY,<br><br>        Defendant. | Case No. 1:13-cv-02084-AWI-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS [ECF No. 33]<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff William Brown is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On January 27, 2017, Plaintiff consented to magistrate judge jurisdiction. (ECF No. 6.) Defendant W. Rasley has declined to United States Magistrate Judge jurisdiction. (ECF No. 49.)

On May 22, 2017, the Court screened Plaintiff's second amended complaint pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B), and found that it stated a cognizable claim for retaliation in violation of the First Amendment, excessive force in violation of the Eighth Amendment, and conversion against Defendant Rasely. (ECF No. 33.) The Court dismissed all other claims and defendants for the failure to state a cognizable claim for relief. (Id. at 14.) The Court indicated that jurisdiction existed under 28 U.S.C. § 636(c) based on the fact that Plaintiff had consented to Magistrate Judge jurisdiction and no other parties had yet appeared. (See id. at 1.)

1

# I. Williams v. King

On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil case. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Court did not have jurisdiction to dismiss the claims described in its May 22, 2017 order.

Here, no defendant was yet served at the time that the Court screened the second amended complaint, and therefore none had appeared or consented to Magistrate Judge jurisdiction. Because all defendants had not consented, the undersigned's dismissal of Plaintiff's claims is invalid under Williams. Because the undersigned nevertheless stands by the analysis in the previous screening order, she will below recommend to the District Judge that the non-cognizable claims be dismissed.

# II. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d

1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III. Complaint Allegations

Plaintiff's complaint concerns events at CSP-Corcoran. Plaintiff names as defendants the following individuals employed by the CDCR at CSP Corcoran: Warden Connie Gipson; Sgt. J. Gonzales; Correctional Officer (C/O) A. Guzman; John Doe defendants.

Plaintiff alleges as follows: Plaintiff became a target for possible S.T.G. validation with the B.G.F. out of retaliation when he wrote an article titled, "This Aint the Soft K.A.G.E." by William Brown, #T58106, editor at sfbayview.com. Plaintiff exposed CSP-Corcoran officials' corporate malfeasance regarding prison conditions and neglect that caused the death of a fellow striker, Christian Gomez, who was housed illegally in ASU (solitary confinement). CDCR Director Matthew Cates contacted Warden Gipson and stated his dislike for Plaintiff for using staff names as being responsible for causing a hunger strike, prison conditions, and the death of Gomez. The phone call from Director Cates to Warden Gipson triggered an IGI/ISU investigation.

Upon visiting Plaintiff, IGI officials asked Plaintiff, "Did you write this article in San Francisco Bay View?" Plaintiff responded, "Yes I did." IGI then stated as follows:

> Well you're in trouble now – because had Matthew Cates not called the Warden Connie Gipson, we wouldn't be here and you would have been unnoticed. Now, we will be coming at you, and because you mentioned the names of staff and even used other "Black Panther" (B.G.F.) members' names, such as "Kevin Rasheed Johnson" et al., we will validate you as a possible member from Oakland. We also know your nickname is Pyeface and you're a rapper of "High Side Records."

(ECF No. 31, p. 3 ) (errors in original).

3

| | |
|---|---|
| 1 | On June 25 or 26, 2013, the United K.A.G.E. Brothers submitted demands to CSP-Corcoran administration and the media editor at sfbayview.com, that Plaintiff and others would engage in a July 8, 2013 mass hunger strike. |

On June 25 or 26, 2013, the United K.A.G.E. Brothers submitted demands to CSP-Corcoran administration and the media editor at sfbayview.com, that Plaintiff and others would engage in a July 8, 2013 mass hunger strike.

On June 26, 2013, C/O Guzman subjected Plaintiff to a body search. This was a racist stop and frisk, based upon an earlier confrontation regarding C/O Guzman et al. always harassing New Afrikan/Black prisoners via intrusive body search. While under Sgt. Gonzales' supervision, C/O Guzman used force upon Plaintiff. C/O Guzman then fabricated a 115 RVR to cover-up his illegal act and concerted efforts in collusion with his coworkers to repress, steal, or destroy "green dot" account numbers worth over $3,000 within Plaintiff's green dot money pack account.

In June 2013, Plaintiff was placed in ASU (solitary confinement) for making a First Amendment complaint known against C/O Guzman et al.

On July 8, 2013, Plaintiff and others engaged in a mass hunger strike. On July 10, 2013, Plaintiff was given a false 115 RVR for S.T.G. activity regarding the mass hunger strike.

While housed in ASU, Sgt. Rasley et al. used excessive force via smoke grenade thrown into Plaintiff's cell, #134, because those ASU officials claim that Plaintiff is always speaking out, and complaining to supervisors (A.T.G.), grand jury, etc., 602 forms. Sgt. Rasley, in collusion with other supervisor state agents, were to "hush" Plaintiff by isolating him away from other complaining inmates and out of the entry/exit of state officials (such as the media, grand jury, Attorney Generals who were visiting CSP-Corcoran due to the mass hunger strike, and other related prison conditions). Force was used to move Plaintiff to another cell. Sgt. Rasley took illegal possession of Plaintiff's television and other package items because Plaintiff demanded his rights via peaceful protest.

Cpt. Cenerios submitted a 128B closure report to Warden Gipson et al., which stated, "Subject Brown T58106 instigated other prisoners in a mass hunger strike, so it is recommended that he be transferred to another state prison." Plaintiff was not listed as having any safety and security, or enemy concerns. Plaintiff was housed in ASU as a non-disciplinary status prisoner, and his adequate housing level via way of family hardship, was level 4270.

///

4

Plaintiff submitted a 602 against his illegal transfer, but he was subjected to being transferred to Pelican Bay State Prison ("PBSP") Level 4 180 max prison.

Plaintiff asserts the following violations: (1) his First Amendment right to peacefully protest and/or religious right to assemble; (2) his Fourth Amendment property rights; (3) his Fifth, Sixth, and Eighth Amendment rights against cruel and unusualness; (4) the Thirteenth Amendment, due to mass incarceration and treatment as an illegal citizen and help captive; (5) the Equal Protection of the Fourteenth Amendment and Due Process.

Plaintiff seeks compensatory and punitive damages, an injunction and restraining order regarding housing transfers, and other relief as the court deems relevant.

## IV. Discussion

### 1. Right to Protest

Plaintiff complains of negative consequences arising from him exercising his First Amendment rights to protest and assemble. Accordingly, the Court construes his allegations as a claim for retaliation in violation of the First Amendment.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 F.3d at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff asserts that he was "targeted" for gang validation in retaliation for engaging in protected speech, specifically writing an article that was critical of prison officials. Plaintiff does not allege sufficient facts to state any retaliation claim under the First Amendment. California regulations governing gang validation procedures, Cal. Cod. Reg. § 3378, require prison officials

5

to have at least three pieces of evidence supporting a gang connection, one of which must provide a "direct link" to a known gang member. California's process of identifying suspected gang members and associates has consistently been found by the Ninth Circuit to serve legitimate penological interests. See, e.g., Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) ("It is clear . . . that prisons have a legitimate penological interest in stopping prison gang activity."). In this case, Plaintiff alleges that IGI officials told him during an investigation that information in his article, such as the use of names of B.G.F. members, was used to validate Plaintiff as a possible gang member. Although gang validation may be an adverse action, Plaintiff's own allegations were that the validation process was initiated for a legitimate penological purpose, and based on uncontested facts (the use of known gang members' names and information in his article).

Likewise, Plaintiff's allegations regarding the investigation by IGI officials into Plaintiff's activities and possible gang-affiliation status, as prompted by Director Cates contacting Warden Gipson, also do not state any claim for retaliation in violation of the First Amendment. Being interviewed as part of an investigation does not constitute an adverse action against an inmate. Further, information-gathering as part of an investigation into a mass hunger strike, prison conditions, potential prison gang activity, and an inmate's death serves the legitimate correctional goals of promoting the safety and security of the institution, inmates, and staff. See Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (gathering evidence on B.G.F. affiliates serves a prison's legitimate penological interest in stopping prison gang activity); Stefanow v. McFadden, 103 F.3d 1466, 1472 (1996) (recognizing prison security as a legitimate and "compelling" penological interest).

Plaintiff's allegations about his transfer to ASU are not sufficient to state a claim for retaliation in violation of the First Amendment. Plaintiff alleges that he was transferred to ASU for making complaints about staff. However, he does not describe who was responsible for his transfer. To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011). Nor does Plaintiff explain how long he

6

was in the ASU, or whether it was done for any legitimate penological purpose, such as pursuant to an investigation or to facilitate a transfer to a different housing unit.

Plaintiff's allegations that he was transferred to another institution based on a 128B closure report to Warden Gipson also do not state any claim for retaliation in violation of the First Amendment. According to Plaintiff, the report stated he was transferred for instigating a mass hunger strike. Plaintiff does not dispute this fact; he affirmatively asserts that he is involved in the United Kings Against Genocidal Environments (K.A.G.E) Brothers and was involved in making demands on behalf of that group and organizing a mass hunger strike. While engaging in a hunger strike may be protected conduct depending on the totality of the circumstances, instigating a mass hunger strike is disruptive to prison safety and security, and is not protected conduct under the First Amendment. See Arredondo v. Drager, No. 14-CV-04687-HSG, 2016 WL 3755958, at *7-8, 15 (N.D. Cal. July 14, 2016) (collecting cases); see also Fulton v. Lamarque, No. C 03-4709 RMW (PR), 2008 WL 901860, at *5 (N.D. Cal. Mar. 31, 2008) (prisoner has no First Amendment right to instigate a strike).

Plaintiff also alleges that a smoke grenade was thrown into his cell by Sgt. Rasely because he was making complaints and filing 602 forms, according to ASU officials. Plaintiff further alleges that Sgt. Rasely took his television and other package items as a punishment for Plaintiff engaging in peaceful protests. Liberally construed, these allegations against Sgt. Rasely are sufficient to state a claim for retaliation in violation of the First Amendment.

### 2. Property

Plaintiff claims a violation of his Fourth Amendment property rights. A prisoner is not protected by the Fourth Amendment against the seizure, destruction or conversion of his property. Taylor v. Knapp, 871 F.2d 803, 806 (9th Cir.), cert. denied, 493 U.S. 868 (1989). Nor is there a due process protection implicated here; the availability of an adequate state post-deprivation remedy, e.g., a state tort action, precludes relief because it provides sufficient procedural due process. Zinermon v. Burch, 494 U.S. 113, 128 (1990) (where state cannot foresee, and therefore provide meaningful hearing prior to, deprivation statutory provision for post-deprivation hearing or common law tort remedy for erroneous deprivation satisfies due process); King v. Massarweh,

7

782 F.2d 825, 826 (9th Cir.1986) (same). California law provides such an adequate post-deprivation remedy. Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir.1994) (citing Cal. Gov't Code §§ 810-895).

The elements of a conversion are: (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." Greka Integrated, Inc. v. Lowrey, 133 Cal. App. 4th 1572, 1581, 35 Cal. Rptr. 3d 684 (2005) (internal quotation marks omitted); see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896, 906 (9th Cir.1992). "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant." Gilman v. Dalby, 176 Cal. App. 4th 606, 615 n. 1, 98 Cal. Rptr. 3d 231 (2009).

Plaintiff may proceed under California state law for the deprivation of his television and other package items that he asserts were improperly confiscated by Sgt. Rasely.

However, his claim against C/O Guzman for stealing or destroying "green dot" account numbers are not related to this action, and therefore the Court will recommend that Plaintiff cannot proceed on that claim in this action. As Plaintiff has been repeatedly warned, he may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 653 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

### 3. Cruel and Unusual Punishment[1]

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v.McMillian, 503 U.S. 1, 5 (1992)

---

[1] Plaintiff seeks to state a claim under the Fifth and Sixth Amendment for "cruel and unusualness." The protection against cruel and unusual punishment of prisoners is governed by the Eighth Amendment.

The Fifth Amendment permits an individual not to answer official questions put to him in any proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. Baxter v. Palmigiano, 425 U.S. 308, 316 (1976). The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; see also Gideon v. Wainwright, 372 U.S. 335, 342–43 (1963) (holding that Sixth Amendment right to counsel extends to state court proceedings through the Fourteenth Amendment). Plaintiff's allegations do not implicate these rights.

(citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

Plaintiff's allegations are insufficient to state a claim for an Eighth Amendment violation against Sgt. Gonzales and C/O Guzman. Although Plaintiff alleges that "force" was used by C/O Guzman under Sgt. Gonzales's supervision, Plaintiff does not allege any facts about the force, and has not shown that it was used sadistically or maliciously to cause harm. Therefore, the Court will recommend that these claims be dismissed.

Liberally construed, Plaintiff has alleged sufficient facts that Sgt. Rasley subjected him to excessive force, when he alleged that Sgt. Rasley threw a smoke grenade into Plaintiff's cell because of Plaintiff's complaints and grievances, and not due to any legitimate need for force.

### 4. Thirteenth Amendment

Plaintiff generally alleges that his incarceration violates the Thirteenth Amendment. The Thirteenth Amendment proscribes slavery and involuntary servitude "except as a punishment for crime whereof the party shall have been duly convicted," and empowers Congress to enforce the article. U.S. Const. amend. 13. Where a person is duly tried, convicted, sentenced, and imprisoned for crime in accordance with law, no issue of peonage or involuntary servitude arises. Draper v. Rhay, 315 F.2d 193, 197 (9th Cir. 1963), cert. den., 375 U.S. 982 (1964). Even if Plaintiff had been required to work as a penalty for the disciplinary violation, such a work requirement would have been imposed in accordance with prison rules, and thus the Thirteenth

Amendment would be inapplicable. Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994). Plaintiff has alleged no facts showing any possibility of a violation of the Thirteenth Amendment.

### 5. Fourteenth Amendment Equal Protection

Plaintiff generally alleges a violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause requires the state to treat all similarly-situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To prevail on an Equal Protection claim brought under § 1983, a plaintiff must allege facts plausibly showing that "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." See Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)). Under this theory of equal protection, the plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a suspect class. Id. Mere indifference to the effect of a decision on the member of a protected class is not sufficient to show discriminatory intent, nor are conclusory statements of bias. Id. at 1166-67. Plaintiff may also allege an equal protection violation by demonstrating that he "received different treatment from that received by others similarly situated" and that the different treatment was due to his membership in a protected class. See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

Plaintiff alleges that C/O Guzman subjected him to a racist body search, based upon earlier confrontations between C/O Guzman and New Afrikan/Black prisoners. These conclusory allegations are insufficient to state a claim for a violation of the Equal Protection Clause. Plaintiff asserts that C/O Guzman has a history "harassing" searches, but there are no facts to establish that he targeted any particular class of inmates. Nor are there facts from which the court can infer discriminatory intent, such as the use of racial slurs or other discriminatory language. Plaintiff has also not alleged any facts showing disparate treatment of any classes of inmates.

### 6. Fourteenth Amendment Due Process

Plaintiff also generally alleges a violation of his right to due process. To the extent Plaintiff's claim is based upon his allegations of false 115 RVRs, he has not stated sufficient facts to bring any cognizable claim.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply," Wolff, 418 U.S. at 556. With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. Confrontation and cross examination are not generally required. Id. at 567. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

Although Plaintiff has alleged that he was given a false RVR and housed in ASU, he has alleged no facts showing that any of the procedural requirements for the prison disciplinary proceedings were not met. The falsification of a disciplinary report does not state a stand-alone constitutional claim. Canovas v. California Dept. of Corrections, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. Oct. 30, 2014); see e.g., Lee v. Whitten, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. Sept. 5, 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly accused does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 1:14-cv-2084-SAB (PC), 2015 WL 1014257, *2 (E.D. Cal. Mar. 6, 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff fails to state a claim regarding any false 115 RVR disciplinary report.

**7.     Venue**

As noted above, Plaintiff makes allegations concerning events at Pelican Bay State Prison, and has attached documents related to such allegations. Although the allegations are not entirely clear and no specific defendants are named, he appears to challenge the provision of religious accommodations in 2015 and 2016.

The federal venue statute requires that a civil action, other than one based on diversity jurisdiction, be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may be otherwise brought." 28 U.S.C. § 1391(b). The decision to transfer venue of a civil action under § 1404(a) lies soundly within the discretion of the trial court. Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).

The original complaint alleged constitutional violations that occurred at CSP-Corcoran, in the Eastern District of California. Here, the Court recommends denying transfer any of Plaintiff's claims to the appropriate district. Should Plaintiff seek to challenge the conduct of correctional officials at Pelican Bay State Prison, he should file separate actions in the appropriate district.

**8.     Injunctive Relief**

Plaintiff seeks an order of transfer regarding his housing. Because placement of inmates in particular facilities is often a matter of security, the Court may not order Plaintiff's transfer. Moreover, there is no constitutional right to be housed in a particular unit in prison or the facility of one's choice. See Meachum v. Fano, 427 U.S. 215, 255 (1976); McCune v. Lile, 536 U.S. 24, 38 (2002).

///
///
///
///
///

### V. <u>Conclusion and Recommendation</u>

For the reasons explained above, IT IS HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's claim for retaliation in violation of the First Amendment, excessive force in violation of the Eighth Amendment, and conversion against Sgt. Rasely; and

2. All other claims and defendants be dismissed for failure to state a cognizable claim for relief.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 12, 2017**        /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE